IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 22, 2014 Session


**TAMMY GIPSON v.**
**STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**


**Appeal from the Shelby County Circuit Court**
**No. CT00177708     Donna M. Fields, Judge**

_____


**No. W2013-02872-COA-R3-CV - Filed November 4, 2014**

_____


Following Appellant's involvement in an automobile accident and the subsequent denial of coverage by her insurance company (the Appellee herein), Appellant brought the instant action against Appellee, alleging breach of contract, bad faith refusal to pay, violation of the Tennessee Consumer Protection Act, and intentional misconduct.  The trial court granted summary judgment in favor of the Appellee.  Appellant appeals. We conclude that there is a dispute of material fact as to the ownership of the subject vehicle; this dispute of material fact precludes summary judgment.  Accordingly, we reverse the trial court's order and remand for a hearing on the merits.  Reversed and Remanded.


**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court is Reversed and Remanded**

KENNY W. ARMSTRONG, SP. J.,  delivered the opinion of the Court, in which J. STEVEN STAFFORD, J. joined. W. NEAL MCBRAYER, J., filed a separate concurring in part dissenting in part opinion.

James M. Simpson, Kirk Caraway, and John R. Hensley, II, Memphis, Tennessee, for the appellant, Tammy Gipson.

Russell E. Reviere, A. Blake Neill, and W. Christopher Frulla, Jackson, Tennessee, for the appellee, State Farm Fire and Casualty Company.


1

Gary K. Smith, and Karen M. Campbell, Memphis, Tennessee, for the appellee, Lori Giewont, Individually and as Personal Representative and Surviving Spouse of Philip D. Giewont, Deceased.

## MEMORANDUM OPINION[1]

On April 19, 2004, while driving an automobile that she did not own, Appellant Tammy Gipson was involved in a motor vehicle accident that resulted in the death of Mr. Phillip Giewont.[2] At the time of the accident, Ms. Gipson was employed by Thomas "Russ" Petty and Gail Petty (together, the "Pettys"). The vehicle that Ms. Gipson was driving was a 2001 GMC Yukon that was provided by the Pettys for Ms. Gipson's use in the course of her employment as a nanny to the Pettys' children. On the date of the accident, the Tennessee Department of Motor Vehicles' ("DMV") records indicated that the subject vehicle was titled in the name of Vital Records Control ("VRC"), Mr. Petty's employer. Approximately one month before the accident, VRC purportedly entered into a bill of sale, dated March 18, 2004, transferring the vehicle from VRC to the Thomas R. Petty Living Trust ("The Petty Trust"). The certificate of title, showing The Petty Trust as the owner of the vehicle, was not issued by the DMV until April 21, 2004, which was two days after the accident.

At the time of the accident, Ms. Gipson was personally insured by State Farm Fire and Casualty Company ("State Farm," or "Appellee"). One day later, on April 20, 2004, Ms. Gipson notified State Farm of the accident, and informed her agent that she was driving someone else's vehicle when the accident occurred. Bob Nickelson, a State Farm claims adjuster, was assigned the claim by State Farm. Ms. Gipson's State Farm policy states, in relevant part:

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Unless otherwise indicated, the recitation of facts is taken from the materials filed in support of or in opposition to the motion for summary judgment and are not contested.

**Coverage for the Use of Other Cars:**

The liability coverage extends to the use, by an insured, of a newly acquired car, a temporary substitute car or a  non-owned car.

&ast;      &ast;     &ast;

Non-Owned Car— means a car not owned by, registered to or leased to:

1.  You, your spouse,

&ast;      &ast;     &ast;

4.  **An employer of you**, your spouse, or any relative.

(Emphasis added).

Based upon this policy language, State Farm sent a reservation of rights letter to Ms. Gipson on June 22, 2004.  In the June 22nd letter, State Farm informed Ms. Gipson that she may not have coverage under her policy because of the non-owned vehicle definition for an employer's vehicle.  State Farm also reserved its right to assert other coverage issues should they arise.  Three days later, on June 25, 2004, State Farm sent Ms. Gipson another letter notifying her that it was denying coverage because she was "driving [her] employer's vehicle, in the scope of employment, at the time of the accident."

On January 28, 2005, Lori Giewont, individually, and as the personal representative and surviving spouse of Phillip Giewont, filed a wrongful death lawsuit against Ms. Gipson, Thomas Petty, and The Petty Trust, along with several other defendants who are not parties to this appeal.  State Farm did not provide Ms. Gipson with a defense in the wrongful death lawsuit because of its prior determination that there was no coverage for the accident.  State Farm also refused to tender any amount toward settlement of the wrongful death lawsuit. Before the accident occurred, Mr. Petty added the 2001 GMC Yukon driven by Ms. Gipson to his personal Nationwide insurance policies. On the day of the accident, Mr. Petty also added Ms. Gipson as a covered driver on his Nationwide policy.  Accordingly, Nationwide provided Ms. Gipson with a defense and insurance coverage in the wrongful death lawsuit, under both Mr. Petty's automobile policy and his personal umbrella policy.  Nationwide ultimately agreed to pay Ms. Giewont the policy limits of both of the Pettys' policies, totaling

3

approximately $2.3 million. Although Nationwide's payment secured a release for Mr. Petty and The Petty Trust, it did not secure a release for Ms. Gipson.

What followed is somewhat disputed in the record, but we glean that Ms. Gipson's attorney agreed to the $2.3 million settlement paid by Nationwide, but as mentioned earlier, this settlement did not release his client, Ms. Gipson. On or about June 22, 2007, Ms. Gipson consented to Ms. Giewont taking a $6,000,000.00 judgment against her in the wrongful death lawsuit.

On April 11, 2008, Ms. Gipson filed the instant lawsuit against State Farm. In her complaint, Ms. Gipson alleges that: (1) State Farm breached its contract with her by failing to pay the claims at issue as provided in the insurance contract she had with State Farm; (2) State Farm violated the Tennessee Bad Faith Statute, Tennessee Code Annotated Section 56-7-105; (3) State Farm committed the tort of bad faith; (4) State Farm violated the Tennessee Consumer Protection Act by engaging in unfair and/or deceptive practices; and (5) State Farm's conduct was intentional, fraudulent, malicious, and/or reckless in such a manner as to give rise to a claim for punitive damages.

On August 16, 2011, State Farm filed a motion for summary judgment, alleging that: (1) Ms. Gipson cannot prove essential elements of her insurance coverage claim; (2) there are no genuine issues of material fact as to the insurance coverage issue; (3) Ms. Gipson cannot prove essential elements of her bad faith claim; (4) there are no genuine issues of material fact as to Ms. Gipson's bad faith claim; (5) Ms. Gipson cannot prove her Tennessee Consumer Protection Act claim; and (6) there are no genuine issues of material fact as to Ms. Gipson's Tennessee Consumer Protection Act claim.[3] On August 14, 2012, ten days before the scheduled hearing on the motion for summary judgment, State Farm filed a supplemental brief in support of its motion, asking the trial court to consider a report from Parks T. Chastain, a purported insurance coverage expert retained by State Farm. On August 15, 2012, Ms. Gipson filed a motion to strike Mr. Chastain's expert report and to exclude his testimony at trial. Thereafter, on August 16, 2012, Ms. Gipson filed her response in opposition to the motion for summary judgment. In her response, Ms. Gipson argued that there were several issues of disputed material fact, and that State Farm was not entitled to judgment as a matter of law.

---

[3] Before filing the motion for summary judgment, which is the subject of the instant appeal, State Farm filed an initial motion to dismiss under Tennessee Rule of Civil Procedure 12. This motion was denied after hearing on December 9, 2011. The order on State Farm's initial motion to dismiss is briefly discussed below as it relates to the issue of bifurcation and realignment of the parties.

At a hearing on August 24, 2012, the trial court did not rule on the motion to strike, but allowed Ms. Gipson the opportunity to retain experts to dispute the recently asserted allegations made by State Farm's expert, Mr. Chastain. On March 1, 2013, Ms. Gipson filed a supplemental response to the motion for summary judgment, arguing that the doctrines of waiver and estoppel precluded State Farm from prevailing on its motion. On March 8, 2013, State Farm filed a reply to Ms. Gipson's supplemental response. Ms. Gipson filed a second supplemental response to the motion for summary judgment on June 12, 2013; State Farm filed its second supplemental response on June 21, 2013.

The trial court held a second hearing on the motion for summary judgment on July 11, 2013. On December 5, 2013, the court entered its order, granting State Farm's motion for summary judgment and directing entry of final judgment against Ms. Gipson. In its order, the trial court specifically held that: (1) The Petty Trust is one and the same as Thomas Petty for purposes of this case; (2) pursuant to the "Coverage for Use of Other Cars" provision of the State Farm policy, the policy did not provide coverage to Ms. Gipson in the underlying tort case because Ms. Gipson was driving a vehicle that was owned by her employer, Thomas Petty; therefore, the vehicle did not qualify as a non-owned car under the policy; (3) because the State Farm policy did not provide coverage to Ms. Gipson in the underlying tort case, State Farm is entitled to judgment as a matter of law with respect to the extra-contractual claims, including bad faith and violation of the Tennessee Consumer Protection Act; and (4) neither the doctrine of waiver, nor estoppel apply in this case.

Ms. Gipson appeals. She raises five issues for review, as stated in her brief, and slightly modified below:

> 1. Whether the trial court erred in granting State Farm's motion for summary judgment when several genuine issues of material fact existed and when State Farm was not entitled to judgment as a matter of law.
>
> 2. Whether the trial court erred in ruling that neither the doctrine of waiver, nor estoppel applied in this case.
>
> 3. Whether the trial court erred by allowing State Farm to rely on an expert opinion in support of its motion for summary judgment and advising and admonishing Ms. Gipson and Ms. Giewont to retain their own experts, and then failing to even consider or review the opinions of Ms. Gipson and Ms. Giewont's experts prior to ruling on State Farm's motion for summary judgment.

4. Whether the trial court erred by failing to consider record evidence before ruling on State Farm's motion for summary judgment.

5. Whether the trial court erred, in its order dated April 13, 2012, by ruling that the trial of this matter would be bifurcated between coverage and bad faith and that Ms. Giewont could only participate in the coverage trial and would not be allowed to participate in the issue of bad faith.[4]

This case was adjudicated upon a grant of summary judgment. Because this case was filed in 2008, the trial court's ruling on State Farm's summary judgment motion is subject to the standard outlined in **Hannan v. Alltel Publ'g Co.**, 270 S.W.3d 1 (Tenn. 2008).[5] A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn.1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. **Abshure v. Methodist Healthcare–Memphis Hosps.**, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at

---

[4] In her appellate brief, Ms. Gipson purports to raise the additional issue of "[w]hether the trial court erred in its Order dated December 16, 2011 by compelling Plaintiffs former Counsel Jerry Potter to divulge attorney-client privileged communications." However, Ms. Gipson does not discuss this issue in her brief. Rather, she includes a footnote in her appellate brief stating that: "This issue is not argued in the instant Brief, however, Plaintiff reserves the right to address this issue in her Reply Brief." We consider this issue waived because Ms. Gipson does not address it substantively in her brief. As stated by this Court in **Gentry v. Gentry**, No. E2000-02714-COA-R3-CV, 2001 WL 839714 (Tenn. Ct. App. July 25, 2001) "[g]enerally speaking, it is not the office of a reply brief to raise issues on appeal."

[5] The Tennessee General Assembly recently passed 2011 Tenn. Pub. Acts 498, "enacting Tennessee Code Annotated section 20–16–101 with the stated purpose 'to overrule the summary judgment standard for parties who do not bear the burden of proof at trial set forth in **Hannan v. Alltel Publ'g Co.**, its progeny, and the cases relied on in **Hannan**.'" **Skyes v. Chattanooga Housing Authority**, 343 S.W.3d 18, 25 n.2 (Tenn. 2011). However, the new legislation will only impact causes of action accruing after June 10, 2011. Accordingly, we apply the rule adopted by the Tennessee Supreme Court in **Hannan** to the facts of this case.

trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, at 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." ***Id***. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." ***Id***. at 5 (citing ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." ***Martin v. Norfolk Southern Railway. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. ***Stovall v. Clarke***, 113 S.W.3d 715, 721 (Tenn. 2003); ***King v. Betts***, 354 S.W.3d 691, 712 (Tenn. 2011) (citing ***B & B Enters. of Wilson Cnty., LLC v. City of Lebanon***, 318 S.W.3d 839, 845 (Tenn. 2010). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." ***Mathews Partners***, ***L.L.C. v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Byrd***, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." ***Byrd***, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." ***Id***. "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." ***Landry v. South Cumberland Amoco, et al***, No. E2009–01354–COA–R3–CV, 2010 WL 845390 (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn.1995)).

## Dispute of Material Facts

The resolution of this case involves contract interpretation. The relevant language of the policy is set out earlier in this opinion. Ms. Gipson's State Farm policy covers non-owned cars. The policy, rather confusingly, defines a "non-owned car" as a vehicle that is **not** owned by the insured's employer. In other words, if the subject vehicle **is not owned** by Ms. Gipson's employer, then it would fall within the definition of a non-owned car, and there would be coverage. On the other hand, if the vehicle **is owned** by Ms. Gipson's employer, then it is not a "non-owned car," and there is no coverage. The question, then, is who owned

7

the vehicle that Ms. Gipson was driving at the time of the accident? From our review of the record, there is a dispute of material fact on this issue, and this dispute precludes the grant of summary judgment.

Under Tennessee law, ownership of a vehicle is determined by the intent of the parties and is not conclusively determined by the certificate of title. *Smith v. Smith*, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983). Ownership is a question of fact. *Cunningham v. Dep't of Safety*, No. 01A01-9509-CH-00411, 1997 WL 266851, at *2 (Tenn. Ct. App. May 21, 1997). In determining ownership of a vehicle, the trier of fact may consider such evidence as: (1) the circumstances surrounding the vehicle's purchase; (2) the registration of the vehicle; (3) all aspects of insuring the vehicle; (4) the parties' respective financial stakes in the vehicle; (5) the actual possession of the vehicle; (6) the responsibility of bearing the expense of operating, maintaining, and licensing the vehicle; and (7) the ultimate right to control the vehicle and to make major decisions concerning the vehicle such as its use and restrictions on its use or sale, or other disposition of the vehicle. *Id*.

Applying the foregoing factors to the instant case, there is clearly a question concerning the ownership of this vehicle, and there are several reasonable inferences that can be drawn from the facts. First, State Farm's own records could lead a trier of fact to conclude that Mr. Petty's employer, VRC, owned the car at the time of the accident. As noted above, when the accident occurred, the vehicle was still titled to VRC. Documents produced by State Farm from its Claim File/Activity Log, list the ownership of the vehicle as "Vital Records Control," and describe the vehicle as a "non-owned car." Scott Milewski, a State Farm supervisor, testified that if VRC owned the vehicle, there would be coverage because VRC was not Ms. Gipson's employer.

Another reasonable inference from the facts is that the vehicle was owned by The Petty Trust. Mr. Petty purportedly acquired the vehicle from VRC in March of 2004. According to his deposition testimony, it was Mr. Petty's intent to put the vehicle into the trust:

> Q. So at least at that point it was your intent to do this vehicle
> like you did a lot of your other assets, and that's put it in the
> name of the trust and not in your name individually?
>
> A. Correct.

Because the intent of a party is a valid consideration in determining ownership of a vehicle, Mr. Petty's stated intent could be construed as conferring ownership of the vehicle to his trust.

8

The parties devote large portions of their respective briefs to argument concerning whether The Petty Trust and Mr. Petty are one and the same (as State Farm contends), or whether The Petty Trust is a separate legal entity (as Ms. Gipson contends). Unless and until such time as ownership of the vehicle is established in The Petty Trust, the ramifications of that determination are not ripe for adjudication. At this point in the litigation and, indeed, until a trier of fact concludes that The Petty Trust owns the vehicle, any discussion of trust law would be advisory and, therefore, outside the purview of this Court. "In an. . . appeal as of right, the appellate court considers only questions that were actually adjudicated by the trial court." *Shaffer v. Memphis Airport Authority, Serv. Mgmt. Sys., Inc.*, No. W2012–00237–COA–R9–CV, 2013 WL 209309, at \*4 (Tenn. Ct. App. Jan. 18, 2013) (citing *In re Estate of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008) ("At the appellate level, we are limited in authority to the adjudication of issues that are presented and decided in the trial courts."). "To do otherwise would render the. . . appeal a request for an advisory opinion." *Shaffer*, 2013 WL 209309, at \*4. The facts presented in this case create a dispute as to the ownership of the vehicle that Ms. Gipson was driving on the day of the accident. Because of the various factors that should be considered by a trier of fact in determining vehicle ownership, summary judgment is inappropriate in this case.

We note that in granting summary judgment to State Farm, the trial court held that "The Petty Trust is one and the same as Thomas Petty for purposes of this case." By this holding, the trial court infers that ownership by either Mr. Petty or his trust precludes Ms. Gipson's coverage under her State Farm policy. In light of our conclusion above that there is a dispute of material fact concerning ownership of the vehicle, the trial court's inference was premature, and was given in favor of the moving party (State Farm), which contradicts the applicable summary judgment standard. Upon remand, if the trial court (or the trier of fact) determines that the vehicle is owned by The Petty Trust, our holding does not preclude the court from allowing the parties to argue the ramifications of that holding, i.e., whether The Petty Trust and Mr. Petty are one and the same.

## Estoppel / Waiver

In its order, the trial court specifically found that "neither the doctrine of waiver nor estoppel appl[ies] in this case." We note that Ms. Gipson raised the estoppel/waiver argument only as a defense to the motion for summary judgment. Having determined above that summary judgment should not have been granted in light of the dispute of material fact concerning ownership of the vehicle, we pretermit this issue.

## Bifurcation and Realignment of the Parties

In its order denying State Farm's initial motion to dismiss, the trial court stated that

9

> the coverage issue in this case should be separated from the bad faith and other extra-contractual issues. Therefore, the trial in this case will be bifurcated, with the issue of insurance coverage being tried first. Defendant Lori Giewont and her counsel shall be allowed to participate in the trial of insurance coverage and the parties shall be realigned to reflect that both Tammy Gipson and Lori Giewont are adverse to State Farm on the insurance coverage issue. The issue of bad faith and any other extra-contractual issues shall be tried second, but with the same jury panel for purposes of judicial economy. Defendant Lori Giewont and her counsel shall not be allowed to participate in the trial of bad faith and other extra-contractual issues, if any.

The trial court indicated some of its reasons for the foregoing decision in its statements from the bench made during the hearing on State Farm's motion to dismiss. Specifically, at the December 9, 2011 hearing, the trial court acknowledged that Ms. Giewont, as a judgment creditor, was a real party in interest. However, the trial court also expressed concern that with Ms. Giewont participating in witness examination along with Ms. Gipson and State Farm's lawyers, there would be too many lawyers involved.

Although the trial court has expressed an intent to bifurcate the trial and to realign the parties, the fact remains that no trial has occurred to date. At this point, the trial court has not implemented its plan to bifurcate or to realign parties and is free to re-evaluate its previous position. Therefore, for this Court to engage in a discussion of the trial court's statements concerning the structure of trial that has not occurred would be advisory at this point. Our decision does not preclude the trial court from revisiting this issue prior to any trial.

We refer the trial court to Tennessee Rule of Civil Procedure Rule 42.02, which addresses bifurcation. This Rule provides, in relevant part, that: "The court for convenience or to avoid prejudice may in jury trials order a separate trial of any one or more claims. . . ." The wording of the Rule indicates the decision whether to order separate trials is left to the discretion of the trial judge. The only guideline articulated in the Rule is "for convenience or to avoid prejudice." However, the Tennessee Supreme Court has given more detailed directions for determining whether to order separate trials. *See* ***Ennix v. Clay***, 703 S.W.2d 137 (Tenn.1986).

The ***Ennix*** Court emphasized that "the interests of justice will warrant a bifurcation of the issues in only the most exceptional cases and upon a strong showing of necessity." ***Ennix***, 703 S.W.2d at 139. Factors the trial court should consider include "the possibility of juror confusion, the risk of prejudice to either party, and the needs of judicial efficiency." ***Id***. The

10

Court did emphasize one factor that is to be the premier consideration: "Above all, the issues at trial must not be bifurcated unless the issue to be tried is so distinct and severable from the others that a trial of it alone may be had without injustice." *Id*. (citing *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).

Upon remand, we recommend that the trial court revisit the issues of bifurcation and realignment of the parties in light of the foregoing authorities. Further, in this regard, the trial court should clearly set forth its reasons for whatever decision it ultimately makes concerning bifurcation and/or realignment. However, until we know what the trial court decides, this issue is not ripe for appellate review.

Based upon our holding that summary judgment is not warranted, and our decision to reverse the trial court and remand for hearing on the merits, we pretermit any remaining issues.

For the foregoing reasons, we reverse the order of the trial court granting summary judgment in favor of Appellee State Farm. We remand the case for hearing on the merits and for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellee, State Farm Fire and Casualty Company, for all of which execution may issue if necessary.

_____
KENNY W. ARMSTRONG, JUDGE